FILED

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

2016 MAR -3 P 3: 16

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| |
|---|
| NSPIRE SPORTS LEAGUE, LLC<br>2430 Victory Park Lane<br>Dallas, Texas 75219,<br><br>*Plaintiff,*<br><br>v.<br><br>IFBB PROFESSIONAL LEAGUE<br>P.O. Box 3224<br>Pittsburgh, Pennsylvania 15230,<br><br>INTERNATIONAL FEDERATION OF<br>BODYBUILDING AND FITNESS<br>c/ Dublín, n° 39 I<br>28232 Europolis<br>Las Rozas<br>Madrid, Spain,<br><br>and<br><br>NATIONAL PHYSIQUE COMMITTEE OF<br>THE USA, INC.<br>P.O. Box 3711<br>Pittsburgh, Pennsylvania 15230,<br><br>*Defendants.* |

Case No. 1:16 CV 232 CMH/TCB

JURY TRIAL DEMANDED

## COMPLAINT

Nspire Sports League, LLC ("Nspire") files this Complaint against the IFBB Professional League ("IFBB Professional"), the International Federation of Bodybuilding and Fitness ("IBBF"), and National Physique Committee of the USA, Inc. d/b/a NPC ("NPC") (collectively, "Defendants"), and would show the Court as follows:

## NATURE OF ACTION

1. Defendants have monopolized and/or attempted to monopolize the business of competitive bodybuilding in the United States by locking out potential competitors, including Nspire, through, among other things, exclusive dealing contracts and/or *de facto* exclusive dealing contracts with vendors, sponsors, contest judges, and competitors.

2. As a result of Defendants' unlawful anticompetitive activities, Nspire has been substantially injured in its business, and Nspire likely will be forced out of the market altogether if Defendants' conduct goes unchecked.

3. The purpose of this action is (a) to clear the way for transparent and healthy competition in the bodybuilding community, and (b) to seek legal and equitable redress for the injuries Nspire has already sustained, or will suffer, as a result Defendants' ongoing violations of antitrust law.

## THE PARTIES

4. Nspire is a Texas limited liability company with its principal place of business at 2430 Victory Park Lane, Dallas, Texas 75219.

5. IFBB purports to be a nonprofit legal entity registered under Spanish law that is headquartered in Madrid, Spain.

6. IFBB Professional purports to be a legal entity with a Pittsburgh, Pennsylvania PO Box mailing address; however, there is no filing for IFBB Professional with the Secretary of State for the Commonwealth of Pennsylvania.

7. NPC is a nonprofit Ohio corporation that has been headquartered in and transacting business out of Pittsburgh, Pennsylvania since approximately 1985. NPC's offices are located at 212 9th Street, Suite 500, Pittsburgh, Pennsylvania 15222.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because the action arises under Section 2 of the Sherman Act, 15 U.S.C. § 2.

9. This Court has jurisdiction over NPC because it is a corporation that transacts business in the district by, among other acts, holding amateur bodybuilding competitions in Virginia, such as: (i) the Virginia Cup held on August 2, 2014 in Norfolk, Virginia, (ii) the Virginia Grand Prix held on June 13, 2015 in Norfolk, Virginia, (iii) the 2016 NPC MaxMuscle VA Classic Bodybuilding Show to be held on April 30, 2016 in Woodbridge, Virginia, (iv) the 2016 NPC Virginia Battle Royale Championships to be held on August 20, 2016 in Virginia Beach, Virginia, and (v) the 2016 NPC Max Muscle Mid-Atlantic Open & Armed Forces Bodybuilding Show & the NPC VA/DC State Show to be held on November 12, 2016 in Woodbridge, Virginia. Upon information and belief, NPC also appointed a District Chairperson for Virginia.

10. This Court has jurisdiction over IFBB because it is a corporation that (a) transacts business in the district, and (b) has continuous and systematic ties with the forum and the United States in general due to its holding of amateur bodybuilding competitions, such as NPC-sponsored events listed above, in Virginia and throughout the United States through NPC, which serves as its agent, alter ego, or cat's paw.

11. This Court has jurisdiction over IFBB Professional because it is a corporation that transacts business in the district by, among other acts, holding and marketing professional bodybuilding competitions throughout the United States and by qualifying athletes who finish highly at the above-described NPC contests in Virginia to compete at events where those athletes may earn the "pro card" necessary to register for IFBB Professional events.

12. Venue is proper under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) because Defendants are corporations that transact business in the district, and/or under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## INTERSTATE TRADE AND COMMERCE

13. The business activities of Defendants that are the subject of this action were within the flow of, and substantially affected, interstate trade and commerce.

14. During the limitations period, Defendants transacted business in multiple states in a continuous and uninterrupted flow of interstate commerce throughout the United States.

## RELEVANT MARKET

15. The relevant market for the purposes of this action is the market for the regulation, promotion, sanctioning, and staging of amateur and professional bodybuilding competitions in the United States.

16. The relevant geographic scope of the market is the United States because the IFBB and other bodybuilding organizations typically organize themselves into national associations or entities in order to regulate, promote, sanction, and/or stage competitions.

17. The relevant market includes both amateur and professional bodybuilding because Defendants have successfully prevented the market from separating into amateur and professional components by, as will be described in further detail below, (a) making NPC membership as an amateur a prerequisite for advancement to the ranks of IFBB Professional, and (b) requiring NPC members to avoid competing for, or associating with, competing bodybuilding organizations.

18. If not for the conditions imposed by Defendants that effectively prohibit athletes from associating with bodybuilding organizations outside the IFBB, IFBB Professional, and

4

NPC, many athletes would choose to compete both in events associated with Defendants and in events associated with other bodybuilding organizations, such as Nspire.

19. Furthermore, Defendants have maintained an unrivaled dominance over the relevant market since 1975, which shows that there are significant barriers to entry to the relevant market.

## FACTUAL BACKGROUND

### The Growth of Competitive Bodybuilding and the Fitness Industry

20. The 1977 hit film "Pumping Iron" followed a young Arnold Schwarzenegger as he prepared to face Lou Ferrigno in an IFBB-sanctioned bodybuilding contest, the 1975 Mr. Olympia. For many Americans, it was their first glimpse into the world of competitive bodybuilding.

21. As Mr. Schwarzenegger's popularity grew, so did the public's interest in competitive bodybuilding, and this provided fertile grounds for the burgeoning of what became known as the fitness industry.

22. Competitive bodybuilding (also referred to in the industry as "physique" and/or "fitness" competitions) grew to be a popular sport that attracts tens of thousands of amateurs and professionals in the United States.

23. Moreover, numerous health clubs and training facilities, supplement makers and distributors, workout gear manufacturers, magazine and website publishers, and other businesses sprang up to help people emulate their bodybuilding heroes.

24. Altogether, the bodybuilding industry is a multi-billion industry that focuses on attracting consumer-athletes and maintaining their loyalty.

**Defendants' Anticompetitive Conduct**

25. The IFBB, which has dominated the sport of amateur and professional bodybuilding from its inception, has unfortunately used its dominant market position to "muscle out" all significant would-be competitors. Specifically, since the 1940s, the sport of bodybuilding has been overseen by the IFBB, an organization that is to the sport of bodybuilding what the Swiss organization FIFA is to the sport of soccer – a lightly regulated entity that wields immense power over how and when official competitions are held, and how sponsorship money flows around the world.

26. Originally, the IFBB oversaw both amateur and professional bodybuilding contests in the United States; however, in 2006, the IFBB spun off its professional bodybuilding arm as Defendant IFBB Professional.

27. IFBB Professional so dominates professional bodybuilding in America that people in the industry understand the term to "go pro" as a bodybuilder in the United States to mean to become an "IFBB Pro."

28. Defendants leverage IFBB Professional's monopoly over professional bodybuilding in the United States to exert near-total control over amateur bodybuilding in America.

29. To become an "IFBB Pro," a bodybuilder must first earn an IFBB Pro Card by competing in events sponsored by NPC, the only domestic amateur bodybuilding organization recognized by the IFBB.

30. Defendants exert significant control over NPC's athletes and judges. The IFBB's written constitution provides that "any athlete or official who participates in a competition or event not approved or sanctioned by the IFBB, may be fined, suspended or expelled" from the organization. (Art. 19.4.7). The IFBB's constitution further states that no IFBB "athlete, judge,

official, administrator or other Member shall hold membership in any other bodybuilding and/or fitness organization; nor shall that Member *participate in or promote, in any way, shape or form*, their activities, failing which the Member may be fined, suspended or expelled." (Art. 19.4.8) (emphasis added).

31. Thus, the IFBB's written constitution requires all athletes who wish to advance to the ranks of professional bodybuilding in the United States to go through NPC only, and to avoid all other competing bodybuilding organizations. As many, if not most, of the better amateur bodybuilding athletes aspire to become professionals, Defendants are able to leverage their monopoly on professional bodybuilding to control top-level amateur bodybuilding as well.

32. Unsurprisingly, amateur bodybuilding in America is dominated by NPC, which (a) claims membership of more than 30,000 individuals across the United States, and (b) regulates, organizes, promotes, and sanctions on a yearly basis more than 300 bodybuilding, fitness, and/or physique competitions throughout the country. At least eighty percent of all amateur bodybuilding athletes in the United States are associated with NPC, and Defendants promote over 50 percent (amounting to approximately 300 events) of all amateur bodybuilding events in the United States, including the vast majority of events held in larger venues where attendance and sponsorship revenues are highest. There is no other bodybuilding organization that holds more than a few dozen competitions in the United States, and those are typically at smaller venues such as high schools and middle schools.

33. Upon information and belief, Defendants further their control over both segments of the market through businesses owned, operated, or controlled by Jim Manion – who serves concurrently as the President of IFBB Professional, the Vice President of IFBB North America, and the President of NPC. Mr. Manion's businesses – including NPC Active Wear, NPC News

7

Online, and DSI – are involved in publishing, clothes manufacturing, and nutritional supplement distribution and marketing. These businesses are highly influential within the United States bodybuilding community because they serve as the main conduit between athletes (who are seeking sponsorship) and fitness industry businesses (who are seeking endorsements or other publicity). In addition, Mr. Manion is able to extract significant value from these businesses precisely because of the monopolistic position of IFBB Professional and NPC.

34. Defendants further the monopoly over the relevant market in at least two ways.

    a. First, Defendants require both amateur and professional bodybuilding athletes to deal with the IFBB, IFBB Professional, and/or NPC exclusively, either through formal agreements or by threatening that Mr. Manion's highly influential businesses will cut ties with individuals who compete outside Defendants' organizations.

    b. Second, Defendants require vendors and sponsors to deal with the IFBB, IFBB Professional, and/or NPC exclusively, either through formal agreements or by threatening that Mr. Manion's highly influential businesses will cut ties with businesses who deal with competing bodybuilding organizations.

35. Thus, athletes cannot compete outside of the IFBB, IFBB Professional, and NPC umbrella without risking expulsion from those organizations and a permanent loss of access to income from sponsorship or advertising. At the same time, bodybuilding-related businesses cannot deal with athletes competing outside of Defendants' organizations without jeopardizing their own access to the events, media, and spokespeople necessary to promote their goods and services.

36. Accordingly, Defendants' actions effectively prevent any rival organization from competing in the relevant market and, therefore, constitute an injury to competition.

### Nspire's Injury

37. After becoming disillusioned with Mr. Manion's leadership, Timothy Lee Thompson left his position as NPC's chairman in Texas and formed Plaintiff Nspire in 2015.

38. Defendants have endeavored to interfere with Nspire's attempt to create a new bodybuilding league.

39. One example of Defendants' willful attempts to monopolize the market for the regulation, promotion, sanctioning, and staging of amateur and professional bodybuilding competitions in the United States is their interference with the 2015 Fitness Space City Championship (the "Space City Event") in Houston, Texas. Specifically, Defendants attempted to destroy Nspire as a competitor there by:

> a. Announcing in late-October 2015 that NPC also would be hosting an event – marketed as the "Texas Cup" – on the same day and in the same city in which the Space City Event was scheduled to take place. Defendants (i) stressed that Nspire's Space City Event was not an NPC-sanctioned event, and (ii) published the following statement on its website in early November 2015 under the heading "WARNING NOTICE":
>
>> The IFBB Executive Council, in its 5th November 2015 meeting in Benidorm, Spain – on recommendation of the IFBB Disciplinary Commission . . . has deliberated the expulsion of Mr. Timothy Lee Thompson from the IFBB, due to his serious breach of provision 19.4.8 of the current IFBB Constitution.
>>
>> The IFBB specifies that athletes, judges and officials who will participate in Mr. Timothy Lee Thompson's organization competitions, will commit a violation of the

    current IFBB Constitution (article 19.4.7) and they will be liable to disciplinary measures.

    - IFBB Legal Commission

b.  The prominent warning to NPC athletes, judges and officials that they would be subject to fines, suspension, or expulsion if they participated in an Nspire-organized competition had the effect of limiting and reducing the number and quality of athletes participating in Nspire's Space City Event.

c.  Upon information and belief, Defendants also caused one of the sponsors of the Space City Event to pull out of it. Specifically, Nspire had arranged with Pro Tan, a division of Performance Brands, Inc. to provide competitor tanning services at the Space City Event. Pro Tan subsequently requested that Nspire not use the Pro Tan Logo in conjunction with the Space City Event, then went on to inform Nspire that Pro Tan was "unable to spray" competitors at the Space City event. Pro Tan instead provided spray tan services at the NPC-sponsored Texas Cup.

d.  NPC's anticompetitive activities dramatically reduced attendance at the Space City Event, and Nspire consequently suffered a net loss of approximately $70,000 on the event.

e.  Furthermore, Defendants through their agents, employees, or allies, including Bob Cicherillo on a podcast, trumpeted the alleged failure of Nspire's Space City Event, insinuated that Nspire is mismanaged, and bragged that Nspire would soon be out of business.

40. There also have been other examples of businesses associated with IFBB and NPC refusing to associate with Nspire, such as:

    a. Keith Thomas, the founder and/or chief executive officer of a nutritional supplement business, informing his employees to avoid associating his company's brands with Nspire on social media because Mr. Thomas's business is "a IFBB / Loyal organization."

    b. A leading bodybuilding magazine, *Muscle & Fitness*, announcing that it could no longer work with an athlete who signed with Nspire "since we are with the NPC."

41. Upon information and belief, Defendants have used intimidation, threats, punishment, harassment, and/or coercion (a) to prevent vendors and sponsors from associating with Nspire, and (b) to cause certain physique athletes who left NPC and/or IFBB Professional to join Nspire, including Andreanna Calhoun and Logan Franklin, to return to NPC and/or IFBB Professional.

42. The loss of talented, up-and-coming athletes, important sponsors, and access to well-regarded media outlets will have a significant long-term negative financial impact on Nspire and other bodybuilding organizations in the relevant market. Thus, Defendants' anticompetitive activities harm Nspire's ability to regulate, promote, sanction, and stage amateur and professional bodybuilding competitions, and to derive income from associated activities. Furthermore, Defendants' conduct is causing a potential imminent exclusion of Nspire from the relevant market.

## CAUSES OF ACTION

### Count I – Monopolization
### (Violation of Section 2 of the Sherman Act)

43. Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

44. As detailed above, the relevant market is the regulation, promotion, sanctioning, and staging of amateur and professional bodybuilding competitions in the United States.

45. IFBB Professional controls professional bodybuilding in the United States, and Defendants leverage their control over that segment to control the amateur segment as well. Specifically, at least eighty percent of all amateur bodybuilding athletes and ninety percent of all professional bodybuilding athletes in the United States are associated with Defendants' bodybuilding organizations. Defendants promote roughly eighty-five percent of all professional-only bodybuilding events in the United States and over 50 percent (amounting to approximately 300 events) of all amateur bodybuilding events in the United States, including the vast majority of events held in larger venues where attendance and sponsorship revenues are highest. There is no other bodybuilding organization that holds more than a few dozen competitions in the United States, and those are typically at smaller venues such as high schools and middle schools.

46. Defendants have willfully acquired their monopoly over the relevant market by:

   a. Expelling or threatening to expel amateur athletes who compete outside the NPC from that organization, while simultaneously making NPC membership a necessary requirement for advancement to the ranks of professional bodybuilding.

   b. Requiring bodybuilding athletes, judges, vendors, and sponsors to work with the IFBB, IFBB Professional, and/or NPC exclusively, either through formal agreements or by threatening that Mr. Manion's highly influential

businesses will cut ties with those athletes, judges, vendors, and sponsors who associate or do business with competing bodybuilding organizations.

c.  Engaging in predatory conduct – such as the use of intimidation, threats, punishment, harassment, and/or coercion – specifically aimed at athletes, judges, vendors, and sponsors who chose to associate with Nspire to cause those persons to disassociate from Nspire.

d.  Having Defendants agents, employees, and/or allies insinuate that Nspire is mismanaged and will soon be out of business.

47. As a direct and proximate result of Defendants' wrongdoing, as alleged herein, Nspire has been injured in its business, including those involving money damages, and likely will be driven from the relevant market altogether if Defendants are not enjoined from engaging in their anticompetitive conduct.

## Count – Attempted Monopolization
### (Violation of Section 2 of the Sherman Act)

48. Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

49. As detailed above, the relevant market is the regulation, promotion, sanctioning, and staging of amateur and professional bodybuilding competitions in the United States.

50. IFBB Professional controls professional bodybuilding in the United States, and Defendants attempt to leverage their control over that segment to control the amateur segment as well. Specifically, at least eighty percent of all amateur bodybuilding athletes and ninety percent of all professional bodybuilding athletes are associated with Defendants' bodybuilding organizations. Defendants promote roughly eighty-five percent of all professional-only bodybuilding events in the United States and over 50 percent (amounting to approximately 300 events) of all amateur bodybuilding events in the United States, including the vast majority of

events held in larger venues where attendance and sponsorship revenues are highest. There is no other bodybuilding organization that holds more than a few dozen competitions in the United States, and those are typically at smaller venues such as high schools and middle schools.

51. Defendants have specifically intended, and continue to specifically intend, their conduct, as alleged herein, to have the effect of destroying competition within the relevant market in the United States by:

    a. Expelling or threatening to expel amateur athletes who compete outside the NPC from that organization, while simultaneously making NPC membership a necessary requirement for advancement to the ranks of professional bodybuilding.

    b. Requiring bodybuilding athletes, judges, vendors, and sponsors to work with the IFBB, IFBB Professional, and/or NPC exclusively, either through formal agreements or by threatening that Mr. Manion's highly influential businesses will cut ties with those athletes, judges, vendors, and sponsors who associate or do business with competing bodybuilding organizations.

    c. Engaging in predatory conduct – such as the use of intimidation, threats, punishment, harassment, and/or coercion – specifically aimed at athletes, judges, vendors, and sponsors who chose to associate with Nspire to cause those persons to disassociate from Nspire.

    d. Having Defendants' agents, employees, and/or allies insinuate that Nspire is mismanaged and will soon be out of business.

52. Defendants' predatory and anticompetitive misconduct as alleged herein has been directed at accomplishing the unlawful objective of destroying competition within the relevant market.

53. Defendants' predatory and anticompetitive misconduct presents a dangerous probability that the IFBB, IFBB Professional, and NPC will succeed in their attempt to monopolize the relevant market, in that, among other things, Defendants have successfully staved off real competition in both the amateur and professional segments of that market for over fifty years.

54. As a direct and proximate result of Defendants wrongdoing, as alleged herein, Nspire has been injured in its business, including those involving money damages, and likely will be driven from the market altogether if Defendants' are not enjoined from engaging in their anticompetitive conduct.

### Count III – Conspiracy to Monopolize
### (Violation of Section 2 of the Sherman Act)

55. Plaintiff restates and re-alleges the preceding paragraphs of this Complaint.

56. As detailed above, the relevant market is the regulation, promotion, sanctioning, and staging of amateur and professional bodybuilding competitions in the United States.

57. IFBB Professional controls nearly the entire professional segment of the relevant market, and Defendants conspire to leverage IFBB Professional's control over that segment to dominate the amateur segment as well.

58. Defendants have contracted, combined, and/or conspired amongst themselves and with certain publishing, manufacturing, distribution, and marketing business owned, operated, or controlled by Jim Manion to destroy competition within the relevant market by:

a. Expelling or threatening to expel amateur athletes who compete outside the NPC from that organization, while simultaneously making NPC membership a necessary requirement for advancement to the ranks of professional bodybuilding.

b. Requiring bodybuilding athletes, judges, vendors, and sponsors to work with the IFBB, IFBB Professional, and/or NPC exclusively, either through formal agreements or by threatening that Mr. Manion's highly influential businesses will cut ties with those athletes, judges, vendors, and sponsors who associate or do business with competing bodybuilding organizations.

c. Engaging in predatory conduct – such as the use of intimidation, threats, punishment, harassment, and/or coercion – specifically aimed at athletes, judges, vendors, and sponsors who chose to associate with Nspire to cause those persons to disassociate from Nspire.

d. Having Defendants' agents, employees, and/or allies insinuate that Nspire is mismanaged and will soon be out of business.

59. As a direct and proximate result of Defendants' wrongdoing, as alleged herein, Nspire has been injured in its business, including those involving money damages, and likely will be driven from the relevant market altogether if Defendants are not enjoined from engaging in their anticompetitive conduct.

## JURY DEMAND

60. Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER

WHEREFORE, Plaintiff prays:

a. That Defendants be enjoined from further anticompetitive conduct, as described herein;

b. That Plaintiff be awarded treble their actual damages in an amount to be determined at trial;

c. That Plaintiff be awarded prejudgment and post-judgment interest as well as costs and reasonable attorneys' fees under applicable law; and

d. That Plaintiff be awarded such and other further relief as this Court deems just and proper under the circumstances.

Dated: March 3, 2016

Respectfully submitted,

_____
Scott A. Cunning, II (VA Bar No. 68071)
scott.cunning@haynesboone.com
Thomas J. Lang (pending *pro hac vice*)
thomas.lang@haynesboone.com
Michael J. Scanlon (pending *pro hac vice*)
michael.scanlon@haynesboone.com
HAYNES AND BOONE, LLP
800 17th Street, NW, Suite 500
Washington, DC 20006
Telephone: (202) 654-4500
Facsimile: (202) 654-4245

Richard D. Anigian (pending *pro hac vice*)
rick.anigian@haynesboone.com
HAYNES AND BOONE, LLP
One Victory Park
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

*Attorneys for Plaintiff Nspire Sports League, LLC*